The 4th District Court of the State of Illinois has reconvened. The Honorable Craig H. D. Armey is presiding. Good afternoon counsel, have a seat. And for the third time today I will say it's a pleasure to see people in real live open court. I'll give you a second to do some housekeeping here. Alright, our next case is 4-24-0109 Governor's State University v. Illinois Educational Labor Relations Board at Hall. Counsel for the appellant, could you please state your name for the record. James Thomas and Elliotts will be checked on behalf of Governor's State University. Alright, thank you sir. Will you gentlemen be sharing your time? I will be the only one arguing here, Your Honor. James Thomas. Okay, thank you. Counsel for the appellate, could you please state your name. Assistant Attorney General Nancy Schaft on behalf of the Educational Labor Relations Board. Good afternoon, Stephen Gilkitch on behalf of the responding University Professionals of Illinois Law 4100. Alright, thank you counsel. Are you going to be splitting your time? Yes. I have 10 and 10, is that correct? Alright. Counsel for the appellant, you may proceed. Good afternoon, Your Honors. I will say it is also a pleasure to be here in person and not doing this over Zoom. May it please the court. The Illinois Educational Labor Relations Board erred by finding that Governor's State University failed to bargain with the University Professionals of Illinois when Chicago State University and Northern Illinois University unilaterally ceased offering tuition waivers to GSU's non-civil service employees. Accordingly, we would ask that this court overturn the decision of the Illinois Educational Labor Relations Board and dismiss the unfair labor practice charge. Your Honor, I want to divide my argument into two pieces. I want to start with the standard of review and then turn to the merits of this case. The parties disagree as to the standard of review in this case. Appellate submits to this court that the standard of review here is de novo because the primary and underlying question in this case is one of pure law. Appellees argue to this court that the standard of review is that for a mixed question of fact and law and therefore should be clearly erroneous. The mixed question of fact and law test does not apply here. Our Supreme Court has adopted the U.S. Supreme Court's standard for determining when a mixed question of law and fact exists. That is the Pullman-Standard v. Swint decision out of the U.S. Supreme Court adopted by our Supreme Court and reiterated in cases such as Sinkist v. Village of Stickney Municipal Officers, which is cited in the board's review. Under that test and what our Supreme Court has said is that mixed questions of fact and law, quote, are questions in which the historical facts are admitted or established. The rule of law is undisputed and the issue is whether the facts satisfy the statutory standard or put in another way, whether the rule of law as applied to the established facts is or is not violated. There is no undisputed rule of law here. This case presents a matter of first impression for this court and was a matter of first impression for the Illinois Educational Labor Relations Court. Now certainly our Supreme Court, this court, other appellate courts, the Educational Labor Relations Board have frequently dealt with the question of when an issue is a mandatory subject of bargaining. But this case presents an entirely different issue, which is when the decision of a third party unrelated to the employer over which the employer did not have any control happens, is that a mandatory subject of bargaining for the employer with the union relationship? That's an issue that our Educational Labor Relations Board, our State Labor Relations Board, no appellate court, the Supreme Court, no one has dealt with that issue. In fact, the Educational Labor Relations Board based its decision solely on two precedents. One was the U.S. Supreme Court's decision in Ford Motor Company versus the National Labor Relations Board. The other one was the National Labor Relations Board decision in Lamont's Apparel. And so we submit to the court that this is probably under a de novo standard because that rule of law is disputed. This court and the Illinois Educational Labor Relations Board before it had to decide what the law would be here in Illinois under the Illinois Educational Labor Relations Act on that subject. Now your Honor, turning to the merits of this case, as I said, the issue before the court is whether Governor State failed to bargain in good faith and could therefore commit an unfair labor practice charge by not notifying and bargaining with the union over a change made by independent universities. And I think the fundamental problem with the Illinois Educational Labor Relations Board's decision is embodied in a portion of that decision and in the issue statements presented by the appellees to this court. The Illinois Educational Labor Relations Board in its decision, and this was the primary holding of them and found on the record in page C196, said responded violated section 1485 and derivatively one of the act by by discontinuing its tuition waiver benefit for non-civil service employees without prior bargaining to agreement or impasse with complaint. Without prior bargaining and by discontinuing. Now the issue statements presented by the appellees, the union presents the issue statement of whether the decision of the ILRB that Governor State University violated the Illinois Educational Labor Relations Act when it failed to notify the union and to bargain in good faith prior to the changes in the tuition waiver benefit. The Attorney General's office on behalf of the board submits a similar issue statement. Whether the board did not clearly err in deciding that the university violated the act by failing to bargain in good faith with the union when it unilaterally changed its inner institutional waiver benefit. When was this bargained before? This has never been bargained with the union, Your Honor. And the point is that it's not something that we can bargain. The history in this case is important. Before 1996, all of the institutions that were part of the governor's board were a single employer. And by statute, those institutions had to provide reciprocal tuition benefits to the other institutions. In 1996, when our legislature broke apart the governor's board and made each of these separate institutions, it created certain provisions about that tuition waiver benefit. For civil service employees, it kept the reciprocal benefit in place. For non-civil service employees, there's nothing in the statute on this issue. In fact, there's nothing in the collective bargaining agreement negotiated between Governor's State and University Professionals of Illinois on this issue. There are provisions on tuition benefits at Governor's State, but not at other institutions. Now, for a period of time, and this is undisputed in the record. Excuse me if I can just interrupt for a second. Did the provision that protected non-civil service employees who worked at Governor's State, did that condition pre-exist back when they were all together? Correct. When they were all together, both civil service and non-civil service employees could go to any institution and receive that tuition waiver because they were considered under the same employer. In fact, University Professionals negotiated one collective bargaining agreement that covered employees at all of those institutions. When they broke it apart in 1996 is when they created this distinction between civil service and non-civil service employees. Now, after 1996, the Governor's State and the other institutions that were formerly part of the Governor's Board did have, for a period of time, in a number of years, a reciprocal arrangement in which the tuition waivers were honored at those other institutions for non-civil service employees. In June of 2019, unbeknownst to Governor's State, Chicago State University and Northern Illinois University unilaterally decided to stop honoring these tuition waivers for Governor's State's non-civil service employees. Is there any evidence in the record that that is part of an agreement that was struck among all of the different universities at or around the same time? There is some, I'll say, fuzzy evidence on that in the record. And what I mean by that is that there's no evidence in the record of a formal written agreement or any action that would be done by the Board of Trustees of any of these institutions where they would formally bind themselves to it. There was testimony at the Illinois Educational Labor Relations Board from a Governor's State employee that indicated that there was a belief that there was a sort of reciprocal agreement between the parties, but it was more of a tacit understanding, I think is probably the better way to describe it, than a formal legal agreement by which these parties were obligated to honor that. And that's important here in this case, because Chicago State University and Northern Illinois University had no obligation to provide these tuition waivers to Governor's State's employees. Governor's State could not go out and sue Northern Illinois or Chicago State and say, hey, you're not giving us a benefit that we bargained for. This was part of a policy. It was an informal agreement. It was part of an informal agreement, and I'm sure you'll hear from Apple East, that the Board of Trustees of Governor's State had within their regulations a provision that dealt with the ability of non-civil service employees to get waivers at other institutions. If you look at that language, and I think this is really important, that language in particular makes clear that those waivers are not granted by Governor's State University, but in fact are granted by those other institutions. Is that language adopted in any CBA? It is not adopted in any. The particular language about non-civil service employees having waiver benefits at other institutions is not in any CBA with the UPI and Governor's State that I'm aware of. When was the provision that does protect Governor's State employees at Governor's State classes, when was that included in the bargaining agreement? That is a great question, Your Honor. It's not in the record, and I don't know how far back that provision goes. It's an existing benefit. I will tell you that it's a common benefit in higher education collective bargaining agreements. But the particular provision of the Governor's State University regulation says, and in relevant part, the fees which will be waived by such universities, not the fees that will be waived by Governor's State University. It says by such universities, and that's referring to the first sentence of that paragraph that says, an employee may enroll in any university previously a part of the Board of Governors system. So the regulation that Governor's State had didn't say we're going to pay for those classes. It said such fees will be waived by those universities. Now, again, there was no agreement that would be enforceable to have those fees waived by those institutions. And so in June of 2019, as I mentioned, Chicago State and Northern Illinois University unilaterally chose to end that tuition waiver benefit and no longer grant them to Governor's State employees. Governor's State, and there's no evidence in the record of this, asked them to do it, told them that they should do it, or had any role in that decision making. In fact, what the record makes clear is that Governor's State essentially found out when the individuals who work for Governor's State began having problems with their bills and not getting those tuition waivers that they think that they should have. Now, that presents us with a fundamental problem in this case, which is that Governor's State changed nothing. Before June of 2019, Governor's State was not paying the tuition for these individuals to go to Northern Illinois or Chicago State University. After June of 2019, Governor's State has not been paying the tuition for these individuals to go to those institutions. Governor's State has not changed anything it has done with respect to these tuition waivers, at least in terms of them receiving it. Now, I suspect you'll hear from the appellees that, well, Governor's State changed its policy and they stopped processing these forms. And that is accurate. But they did it because these other institutions said, we will no longer give you these tuition waivers. And so they changed their policy to align with that. And they also stopped processing them because they're not going to process forms that are going to be rejected by those other institutions. Now, Governor's State, as I said, had no say in this, had no role in making that change. And it was not a change of their own occurrence. Now, when we talk about mandatory subjects of bargaining and collective bargaining, the typical process is that the employer itself is going to make a change. And why did I point you back to those issue statements? Well, I think the union's issue statement is particularly relevant because the union talks about giving notice and an opportunity to bargain prior to the decision. And if you look back at case law, that's really what the obligation is under labor law. The problem here is that because Governor's State did not make the decision. All right, sorry. I do it myself. Okay. All right. I'm very, I apologize. That's okay. I'll get slapped on the head. No, no, no, no. You know what? I'm so darn happy that you guys are here in court and we're actually here. It doesn't faze me a bit. I'm just glad we're here. Your Honors, I'd like to address a couple of things that counsels for the appellees raised in response to some of your questions. Mr. Jokic told this court that we don't really know what happened with respect to the circumstances leading to the decisions to terminate these benefits. And that statement is very telling because this case comes to this court after a full evidentiary hearing at the Illinois Educational Labor Relations Board. The union had a full and fair opportunity to elicit whatever evidence it wanted to. It wants to talk about the hypothetical possibilities of what may happen, betting its bottom dollar about what may happen. But the time for it to introduce evidence as to what specifically happened in this case was at the Illinois Educational Labor Relations Board. And because this comes to this court under the Illinois Administrative Review Law posture, that's the facts and that's the circumstances that we have to deal with. And specifically as to the question of what happened leading up to this, the Administrative Law Judge's decision and her factual statements, which were adopted in their entirety by the Illinois Educational Labor Relations Board, shed some light on this. Now the facts do talk about the fact that there was this confusion in May of 2019 about whether the tuition waiver would be granted. But then critically, there's an email that's reproduced from June 7, 2019, on page 7 of the ALJ's decision, record C-126. And that was an email from Alvarado, who's a human resources individual at Governor State, to Northern Illinois, where she wrote, I wanted to contact you regarding the acceptance of inter-institutional waivers for non-civil service employees. Can you tell me if NIU will accept waivers for our employees who are not civil service? And it goes on from there. And then the decision says that NIU contacted them back and said, no, we're not going to accept those waivers. So we know from the record that as of June 7, Governor State was still asking NIU, will you accept these waivers? And NIU then responded, no, we will not accept those waivers. And this comes back to some questions that your Honors were asking with respect to control, potential leverage, and this reciprocal relationship that the AG's office and that the union have talked about. And here, as you said, the institutions of Chicago State and Northern Illinois ended their program. It didn't matter what Governor State did. This was not as if, and there's no record in the evidence, you heard nothing from counsel for the appellees, that Governor State went to them and said, end our tuition reciprocal program, or we're going to cut off your students as well. That's not in the record. And that goes back to Mr. Yokich's statement about we don't really know what happened. We're at a stage at this point where the parties have had a full and fair opportunity to present that evidence. What we have is what is in the record. And what the ILRB said was one thing and one thing only, which is that your potential leverage was to end these reciprocal arrangements. That's not control. Governor State did not make any change to the terms and conditions of employees. The status quo, as this court pointed out, was that we submitted those waiver requests, and the waivers were granted, if at all, by those institutions. That's what the board's regulations said. So for those reasons, Your Honors, we would ask that you reverse the decision of the Illinois Educational Labor Relations Board and find that Governor State had no obligation to bargain over the decision of these other institutions to end the waiver program. Thank you. Thank you, counsel. Thank you all. We appreciate your arguments. The court will take this matter under advisement.